' ROBERTS, J.
The appellant, David Trotti, seeks review of an order of the Second Judicial Circuit in and for Leon County that denied his emergency petition for writ of mandamus, which sought to compel the appellee Secretary of State (the Secretary) to accept his qualifying papers for a judicial vacancy in Group 12 of the Fourth Judicial Circuit Court.[1] On appeal, the appellant argues that the circuit court erred in holding that the judicial seat should be filled by gubernatorial appointment rather than by election. We disagree and affirm.
The judicial seat at issue here is currently occupied by Circuit Judge Donald R. Moran, Jr. On March 26, 2014, Judge Moran tendered a letter of resignation to Governor Rick Scott in which he wrote that his resignation was to be “effective the last day of my term in January 2015.” On March 31, 2014, Judge Moran sent a second letter to Governor Scott clarifying that his specific date of resignation was to be Friday, January 2, 2015. January 2, 2015, is three calendar days (one business day) before Judge Moran’s term was due to expire on January 5, 2015. See Art. V. § 10(b)(3)b., Fla. Const.; § 100.041(4), Fla. Stat. (2014).
On April 2, 2014, the appellant filed a Form DS-DE 9 with the Division of Elections (the Division) indicating his intention *643 to run for election for the seat at issue.[2] On April 3, 2014, the Division acknowledged receipt of the appellant’s paperwork and placed him on the Division’s list of active candidates. The appellant was listed as a candidate for Group 12 on the Secretary’s website on April 3, 2014. Although the appellant filed his preliminary paperwork in early April, the statutory qualifying period for the seat was set to begin at noon on April 28, 2014, and end at noon on May 2, 2014. See §§ 105.031(1), 100.061, & 100.032, Fla. Stat. (2014).
On April 10, 2014, Governor Scott sent Judge Moran a letter accepting his resignation. On April 25, 2014, the appellant received an email from the Division informing him that Judge Moran had submitted his resignation and accordingly Group 12 would be fulfilled by gubernatorial appointment rather than election. The Division advised the appellant to withdraw his candidacy or apply for candidacy in a different group.
The appellant filed a petition for mandamus seeking to compel the Secretary to accept his qualifying papers for Group 12 of the Fourth Judicial Circuit.[3] On August 1, 2014, the circuit court entered an order denying the petition. The order found that because Judge Moran resigned prior to the start of the qualifying period and a physical vacancy would occur between the effective date of his resignation and the start of the following term, his seat should be filled by gubernatorial appointment. The court recognized the appellant’s reliance on Spector v. Glisson, 305 So.2d 777 (1974), for the assertion that Florida law generally favors elections. However, the court found that Spector’s holding had been limited to a set of facts in which “a judge resigns effective at a future date and no interim vacancy will exist” between the effective resignation date and the start of the new term. See Pincket v. Harris, 765 So.2d 284, 287 (Fla. 1st DCA 2000) (citing In re Advisory Op. to the Gov. (Judicial Vacancies), 600 So.2d 460, 462 (Fla.1992)). We affirm the order denying mandamus relief.
“Mandamus may not be used to establish the existence of a right, but only to enforce a right already clearly and certainly established in the law.” Fla. League of Cities v. Smith, 607 So.2d 397, 400 (Fla.1992) (emphasis added). The appellant failed to show that the Secretary had a clear legal duty to accept his qualifying papers and fees and qualify him for Group 12 in the 2014 election as the law is clear that the vacancy created by Judge Moran’s resignation must be filled by appointment.
Article V, section 11(b), of the Florida Constitution vests the Governor with the power to fill judicial vacancies via appointment:
The governor shall fill each vacancy on a circuit court or on a county court, wherein the judges are elected by a majority vote of the electors, by appointing for a term ending on the first Tuesday after the first Monday in January of the year following the next primary and general election occurring at least one year after the date of appointment, one of not fewer than three persons nor more than six persons nominated by the appropriate judicial nominating commission. An election shall be held to fill *644 that judicial office for the term of office beginning at the end of the appointed term.
The Florida Supreme Court has provided that when a vacancy is created prior to the commencement of the qualifying period, the vacancy is required to be filled by gubernatorial appointment. See Advisory Op. to the Gov. re Sheriff & Judicial Vacancies Due to Resignations, 928 So.2d 1218, 1220-21 (Fla.2006). Whereas a vacancy that occurs after the election process begins should be filled by election. See Advisory Op. to the Gov. re Judicial Vacancy Due to Resignation, 42 So.3d 795, 797 (Fla.2010) (“[W]hen a vacancy occurs in the county or circuit courts before the qualifying period for the seat commences, the vacancy should be filled by appointment, but once the election process begins, such vacancy should be filled by election.”).
Thus, the salient question to answer here is when the vacancy occurred in relation to the election process. A judicial vacancy occurs when a letter of resignation is received and accepted by the Governor, even if the resignation, as here, has a future effective date. See In re Advisory Op. to the Gov. (Judicial Vacancies), 600 So.2d 460, 462 (Fla.1992) (“When a letter of resignation to be effective at a later date is received and accepted [by the Governor], a vacancy in that office occurs and actuates the process to fill it.”). See also Sheriff & Judicial Vacancies, 928 So.2d at 1220; Spector, 305 So.2d at 780. Thus, when Governor Scott accepted Judge Moran’s resignation on April 10, 2014, the vacancy occurred.
“In order to promote consistency in the process of filling judicial vacancies, we identified the beginning of the statutory qualifying period as a fixed point to mark the commencement of the election process.” Advisory Op. to Gov. re Judicial Vacancy Due to Resignation, 42 So.3d at 797. Here, the statutory qualifying period was due to commence at noon on April 28, 2014, 18 days after the vacancy occurred. As the vacancy occurred before the qualifying period commenced, the Secretary could not conduct a qualifying period because the vacancy had to be filled by appointment. See Sheriff & Judicial Vacancies, 928 So.2d at 1220-21.
The appellant argues that underlying policy considerations should lead to an interpretation favoring election unless the resulting vacancy is “unreasonable.” He argues that the vacancy here — one business day or three calendar days — is not so unreasonable as to require an appointment. In support he relies on Spector, 305 So.2d at 784. In Spector, an incumbent judge resigned effective at the end of his term, midnight on the last day, the qualifying period and election were available after the resignation letter, and there was no emergency or public business requiring an immediate appointment. Id. The Florida Supreme Court held that the seat should be filled by election, recognizing that Florida law generally favors the elective process:
Interim appointments need only be made when there is no earlier, reasonably intervening elective process available. As between the appointive power on the one hand and the power of the people to elect on the other, the policy of the law is to afford the people priority, if reasonably possible ... if such policy is to be modified, let the people speak.

Id.

In Pincket v. Harris, this Court recognized that Spector had been limited to “situations in which a judge resigns effective at a future date and no interim vacancy will exist.” 765 So.2d at 287 (citing In re Advisory Op. to the Gov., 600 So.2d at *645 462)). The appellant argues that Pincket relied on dicta from In re Advisory Opinion to the Governor and that the spirit of the law should be read to mean if a circuit court judge resigns prior to the qualifying period his seat shall be filled by appointment unless his resignation is for a future date and no unreasonable vacancy will occur
We reject the appellant’s arguments inviting an analysis of the reasonableness of the vacancy, which, as pointed out by thé Secretary, would be arbitrary and cannot constitute a duty that can be compelled by mandamus. Deciding the election versus appointment question on the duration of the vacancy created rather than on the interplay between the vacancy and the commencement of the election process would result in inconsistent and confusing precedent. Cf Advisory Opinion to the Governor re Appointment or Election of Judges, 983 So.2d 526, 530 (Fla.2008) (“The determination of constitutional provisions should not vary based upon fluctuations of the individual ‘election process’ for a given year.”). Of further note, Advisory Opinion to the Governor re Appointment or Election of Judges answered the question of whether a judicial seat vacated by an involuntary retirement during the qualifying period should be filled by appointment, which would result in a vacancy of no more than 30 to 60 days, or by election, which would leave the seat unoccupied for more than eight months. Id. at 527-28. The Florida Supreme Court held that because the vacancy occurred during the qualifying period, the vacancy was to be filled by election. Id. at 529. The supreme court focused on the fact that the election process had commenced without regard for the void that would occur in the office. Id.
Here, the vacancy created by Judge Moran’s resignation occurred before the qualifying period, and a physical vacancy will occur during his term such that the vacancy must be filled by gubernatorial appointment. While the dissent may eschew a bright-line test, we cannot engage in a determination of what does or does not constitute an unreasonable vacancy warranting an appointment. If we were to interpret the case law as the dissent suggests and find that an election was required here when the election process had not yet begun, we would be nullifying the Governor’s power of appointment in Article V, section 11(b), of the Constitution in post-election process resignations and pre-election process resignations. Stated otherwise, we would be allowing the limited exception created by Spector to swallow Article V, section 11(b), of the Constitution.
The circuit court appropriately denied the petition for writ of mandamus because there is no clear right to qualify for candidacy for a seat that is required to be filled by gubernatorial appointment.
AFFIRMED.
SWANSON, J., concurs.
PADOVANO, J., dissents with opinion.

. Appellee Bruce Anderson, Jr., intervened in the case below. His relief requested on appeal is moot in light of our disposition of the case.

. Form DS-DE 9 must be filed before a candidate may raise or spend campaign funds, which can occur up to almost two years prior to the qualifying period for the office sought. § 106.021 (l)(a), Fla. Stat. (2014).

. The appellant's petition was originally filed with the Florida Supreme Court, who transferred the petition to the Leon County Circuit Court via order of June 2, 2014.