IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

SCHOOL BOARD OF
HERNANDO COUNTY, PAM
STEWART, IN HER OFFICIAL
CAPACITY AS
COMMISSIONER OF THE
FLORIDA DEPARTMENT OF
EDUCATION, STATE BOARD
OF EDUCATION, SCHOOL
BOARD OF SEMINOLE
COUNTY, SCHOOL BOARD
OF ORANGE COUNTY,
SCHOOL BOARD OF PASCO
COUNTY, AND SCHOOL
BOARD OF OSCEOLA
COUNTY,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NOS. 1D16-3914, 1D16-3932, 1D16-3933, 1D16-3936, 1D16-4052, and 1D16-4084

> **CORRECTED PAGES: pg 3**
> **CORRECTION IS UNDERLINED IN RED**
> **MAILED: March 7, 2017**
> **BY: KMS**

        Appellants,

v.

MICHELLE RHEA, THERESA
BUTLER, GERALDINE
CALLAGHAN, PAM EVERETT,
ALEXA HASANIA, SCOTT
HASTINGS,  AMANDA
HAZARD, MELINDA
HOHMAN, BRANDY
KINKADE, RHONDA
NICKERSON, SUZANNE
ROWLAND, AND GABRIELLE
WEAVER,

        Appellees.

_____/

Opinion filed March 7, 2017.

An appeal from the Circuit Court for Leon County.
Karen A. Gievers, Judge.

Richard Burton Bush, Audra Michelle Bryant, and Lisa J. Augspurger of Bush & Augspurger, P.A., Tallahassee, for Appellant School Board of Hernando County.

Matthew H. Mears, Steven S. Ferst, David L. Jordan, and Mari M. Presley of the Department of Education, Tallahassee; Rocco E. Testani and Stacey M. Mohr of Sutherland Asbill & Brennan LLP, Atlanta, G.A., for Appellants Pam Stewart and State Board of Education.

Serita Beamon of Seminole County Public Schools, Sanford; Donna E. Blanton, Angela D. Miles, and Brittany Adams Long of Radey Law Firm, Tallahassee, for Appellant School Board of Seminole County.

Nicholas A. Shannin and Carol B. Shannin of Shannin Law Firm, P.A., Orlando, for Appellant School Board of Orange County.

Dennis J. Alfonso, Knute J. Nathe, and Carl J. DiCampli of McClain, Alfonso, Nathe & DiCampli, P.A., Dade City, for Appellant School Board of Pasco County.

Amy J. Pitsch and Susana Cristina Garcia of Greenspoon Marder, Orlando, for Appellant School Board of Osceola County.

Andrea Flynn Mogensen of the Law Office of Andrea Flynn Mogensen, P.A., Sarasota, for Appellees.

WETHERELL, J.

In these consolidated appeals, the State Board of Education and the Commissioner of the Department of Education (collectively "DOE") and five local school boards seek review of a nonfinal order that (1) denies the school boards'

motions to transfer or dismiss based on the home-venue privilege and (2) grants temporary injunctive relief against DOE and one of the school boards. We reverse the order and vacate the injunction because the school boards were entitled to be sued in their home venues and none of the requirements for injunctive relief were established.

## I. Factual and Procedural Background

The day before the 2016–2017 school year started in most areas of the state, Appellees (hereafter "the plaintiffs")—a group of parents whose children were not promoted to fourth grade because they "opted out" of the mandatory statewide standardized reading test known as the English Language Arts assessment ("ELA")[1]—filed a complaint in the Leon County circuit court seeking declaratory and injunctive relief against DOE and the school boards for Broward,[2] Hernando, Orange, Osceola, Pasco, Sarasota,[3] and Seminole counties. The complaint alleged that the plaintiffs' children did not have reading deficiencies and that the school boards' decisions to retain the children in third grade without offering a "portfolio

---

[1] The ELA is one of the tests that make up the Florida Standards Assessment, which is commonly referred to as the FSA. See generally Florida Standards Assessments, Fla. Dep't Educ., http://www.fldoe.org/accountability/assessments/k-12-student-assessment/fsa.stml; see also § 1008.22(3), Fla. Stat.

[2] The Broward County School Board is no longer a party because the claims against it were dismissed by the plaintiffs during the pendency of this appeal and its appeal—case number 1D16-3934—was voluntarily dismissed.

[3] The Sarasota County School Board is no longer a party because the claims against it were voluntarily dismissed by the plaintiffs in the trial court.

option"[4] were based on an erroneous interpretation of section 1008.25, Florida Statutes (2015), which was dictated to the school boards by DOE. The complaint included claims alleging violations of the children's rights to due process and equal protection under the state and federal constitutions.

The plaintiffs also filed an emergency motion for a temporary injunction premised on the irreparable harm their children would suffer if retained in third grade. The specific relief requested in the motion was "[a] preliminary injunction enjoining defendants from refusing to accept a student portfolio or report card based on classroom work throughout the course of the school year when there is no reading deficiency."

In response to the complaint—and in some cases, prior to being served—each of the school boards filed a motion to dismiss or transfer asserting their home-venue privilege. After the trial court deferred ruling on the venue motions at a hearing held three days after the complaint was filed, the school boards and DOE jointly removed the case to the federal district court in Tallahassee. In response, the plaintiffs amended the complaint by deleting the federal claims. The federal court thereafter remanded the case to the trial court.

The trial court did not immediately rule on the venue motions after the case was remanded despite the school boards' repeated contentions that they were entitled

---

[4] See § 1008.25(6)(b)4., Fla. Stat.; Fla. Admin. Code R. 6A-1.094221(3).

4

to a ruling on the motions before they were subjected to additional proceedings in this case outside of their home venues. Instead, the court took the venue motions under advisement and held a lengthy evidentiary hearing on the plaintiffs' motion for a temporary injunction.[5]

The evidence presented at the hearing established that the plaintiffs directed their children to "opt out" of—or, as they now characterize it, to "minimally participate" in[6]—the ELA by breaking the seal, writing their names on the test, and then turning it in without answering any questions. Each of the plaintiffs was offered opportunities for their children to take alternative standardized assessments, but they refused. Most of the plaintiffs were also offered the "portfolio option" for their children, but the Hernando County School Board ("HCSB") did not offer that option to students who had not taken the ELA or an alternative standardized assessment.

The evidence also established that although DOE does not have a rule defining "participation" in the ELA, DOE does not consider students who—like the plaintiffs' children—do not even attempt to answer a single question to have "participated" in

---

[5] On the day of the hearing, the school boards filed an emergency petition for writ of mandamus with this court seeking to compel the trial court to rule on their venue motions, but the petition—case number 1D16-3773—was dismissed as moot after the trial court ruled on the venue motions before this court could rule on the petition.

[6] It is noteworthy that, in describing the plaintiffs' actions, the amended complaint used the phrase "opt out" nearly 25 times and did not once use the phrase "minimally participate." Moreover, the amended complaint alleged that one of plaintiffs, Michelle Rhea, told school officials that her child "would not participate" in standardized testing, not that she would "minimally participate" in the testing.

the test. Furthermore, although DOE leaves the review and approval of the "portfolio option" to the local school boards, it published a technical assistance paper ("TAP") explaining the availability of the "portfolio option" and the other good cause exemptions provided in section 1008.25(6)(b) and it adopted a rule establishing the criteria that student portfolios must meet. The TAP provides that the student portfolio and an alternative assessment are "the two state-approved options for good cause exemption" and that "[t]he student must be offered both options," but neither the rule nor the TAP necessarily forecloses a school board from requiring students who do not take the ELA to take an alternative standardized test before offering the "portfolio option" as HCSB does.

Four days after the hearing, the trial court entered a lengthy order denying the school boards' venue motions and granting in part and denying in part the plaintiffs' motion for temporary injunctive relief. Specifically, the order (1) denied injunctive relief against all of the school boards except HCSB because the children from the other counties were either no longer enrolled in public school, had refused alternative promotion options, or had failed to exhaust their administrative remedies regarding the "portfolio option" that was offered;[7] (2) granted injunctive relief against HCSB, requiring it to (a) "immediately provide the portfolio option . . . to

---

[7] The plaintiffs did not cross-appeal this ruling, nor do they challenge the trial court's explicit finding that they contributed to any harm suffered by their children by directing them not to answer any questions on the ELA.

6

any parent who has requested one" and (b) "stop refusing to accept a student portfolio or report card based on classroom work throughout the course of the school year;" and (3) granted injunctive relief against DOE, requiring it to (a) "stop disseminating misinformation that there is no portfolio option available when children do not score a level 2 on the [ELA]," (b) "properly notify the County School Boards that the statutory notice of deficiency and remediation processes must be followed for every student participating (even minimally) in the [ELA] who does not achieve a level 3 score," (c) "notify the County School Boards that the portfolio option must be offered and available to all grade 3 students," and (d) "notify County School Boards that grade 3 students with no reading deficiency should be promoted, not retained."

The school boards and DOE filed timely notices of appeal challenging the trial court's rulings on venue and injunctive relief.[8]

## II. Standards of Review

We review the portion of the trial court's order denying the school boards' venue motions under the de novo standard of review, see Brown v. Nagelhout, 84 So. 3d 304, 308 (Fla. 2012); and we review the portion of the order granting injunctive relief against DOE and HCSB under a hybrid standard of review pursuant to which the court's legal conclusions are reviewed de novo and the factual findings

---

[8] We have jurisdiction. See Fla. R. App. P. 9.130(a)(3)(A), (B).

7

are reviewed for an abuse of discretion, see SunTrust Banks, Inc. v. Cauthon & McGuigan, PLC, 78 So. 3d 709, 711 (Fla. 1st DCA 2012).

### III. Analyisis

The statute at the heart of this case is section 1008.25, which, among other things, establishes standards and procedures for the promotion of public school students from third grade to fourth grade. The statute expresses the legislative intent to eliminate "social promotion" and to determine student progression based, at least in part, on satisfactory performance on the ELA and the other components of the FSA. §§ 1008.25(1), (6)(a), Fla. Stat. To that end, the statute requires all public school students to participate in the ELA. § 1008.25(4)(a) ("Each student must participate in the statewide, standardized assessment program required by s. 1008.22.") (emphasis added); see also § 1008.22(3) ("Participation in the assessment program is mandatory for all school districts and all students attending public schools . . . .") (emphasis added).

Section 1008.25 does not define "participate," but common sense (and the statute as a whole) dictates that the term requires more than the so-called "minimal participation" engaged in by the plaintiffs' children in this case. The purpose of the ELA is to assess whether the student has a reading deficiency and needs additional reading instruction before (and after) being promoted to fourth grade. See § 1008.25(5)(a). The test can only achieve that laudable purpose if the student

8

meaningfully takes part in the test by attempting to answer all of its questions to the best of the student's ability. Anything less is a disservice to the student—and the public. See § 1008.22(1) ("The primary purpose of the student assessment program is to provide student academic achievement and learning gains data to students, parents, teachers, school administrators, and school district staff . . . to be used by districts to improve instruction; by students, parents, and teachers to guide learning objectives; . . . and by the public to assess the cost benefit of the expenditure of taxpayer dollars.").

Students who "exhibit[] a substantial deficiency" in reading based on their performance on the ELA must be given intensive reading instruction, and their parents must be notified, among other things, that "additional evaluations, portfolio reviews, and assessments are available" to help the school district determine if the student is ready for promotion. §§ 1008.25(5)(a), (5)(c)6.; see also § 1008.25(5)(c)7. ("A parent of a student in grade 3 who is identified anytime during the year of being at risk of retention may request that the school immediately begin collecting evidence for a portfolio."). If the student's reading deficiency is not remedied by the end of third grade, the student must be retained. § 1008.25(5)(b) ("To be promoted to grade 4, a student must score a Level 2 or higher on the [ELA].").

Students who do not achieve the requisite score on the ELA may only be promoted to fourth grade if granted a "good cause exemption." § 1008.25(6)(b). A

9

good cause exemption may be granted if the student "demonstrate[s] an acceptable level of performance on an alternative standardized reading or English Language Arts assessment" or if the student "demonstrates through a student portfolio that he or she is performing at least at Level 2 on the [ELA]." § 1008.25(6)(b)3., 4. DOE adopted a rule providing general parameters for these exemptions, see Fla. Admin. Code R. 6A-1.094221, but the decision of whether to grant or deny an exemption is vested solely in the superintendent of the school district where the child is enrolled, see § 1008.25(6)(c), Fla. Stat.

## A. Venue

It is well established that school boards and other governmental entities may only be sued in their "home venue"—the county in which they maintain their headquarters—unless (1) an exception to the home-venue privilege applies or (2) the privilege is waived by the governmental entity. See Carlile v. Game & Fresh Water Fish Comm'n, 354 So. 2d 362, 363–64 (Fla. 1977); Jacksonville Elec. Auth. v. Clay Cty. Util. Auth., 802 So. 2d 1190, 1192 (Fla. 1st DCA 2002) (hereafter "JEA"); Levy Cty. Sch. Bd. v. Bowdoin, 607 So. 2d 479, 481 n.1 (Fla. 1st DCA 1992).

There are only four exceptions to the home-venue privilege: (1) when venue is waived by statute; (2) when the governmental entity is the "sword wielder"; (3) when the governmental entity is sued as a joint tortfeasor; and (4) when a "good cause" petition is filed under chapter 119, Florida Statutes, to access otherwise

10

confidential records.  See Fla. Dep't of Children & Families v. Sun-Sentinel, Inc., 865 So. 2d 1278, 1287–89 (Fla. 2004).

It is undisputed that the first, second, and fourth exceptions do not apply in this case.  The trial court's reliance on the third exception—recognized in Board of County Commissioners of Madison County v. Grice, 438 So. 2d 392, 395 (Fla. 1983)—was misplaced because it applies only when the governmental entity is "sued as a joint tortfeasor" and not, as the trial court concluded, whenever governmental entities are "sued as co-defendants."  It undisputed that the plaintiffs' suit does not assert tort claims against the school boards or DOE.  Accordingly, venue for the plaintiffs' suit against the school boards was proper in Leon County only if the school boards waived their home-venue privileges.

A governmental entity waives its home-venue privilege by submitting to the jurisdiction of a court outside of its home venue or by filing a motion to change venue to a court outside of its home venue.  See Dep't of Agric. v. Middleton, 24 So. 3d 624, 627 (Fla. 2d DCA 2009); Levy Cty. v. Diamond, 7 So. 3d 564, 566 (Fla. 1st DCA 2009); Mansfield v. Singletary, 610 So. 2d 76, 77 (Fla. 1st DCA 1992); Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. State, 295 So. 2d 314, 322–23 (Fla. 1st DCA 1974).  The school boards did neither here; they consistently objected to venue in Leon County, and the only motions to change venue filed by the school boards sought to transfer this case to their home venues.

11

The trial court concluded that the school boards waived their home-venue privileges by removing this case to federal court in Tallahassee. This ruling is erroneous because the school boards could not have removed the case to any other federal court, see 28 U.S.C. §1441(a), N.D. Fla. Loc. R. 3.1(B), and the removal notice specifically stated it was not intended to waive any available defenses, see Middleton, 24 So. 3d at 627 (holding a state agency's willingness to transfer venue to Jackson County, rather than the agency's home venue of Leon County, did not constitute a waiver of the home-venue privilege so as to allow the suit to proceed in Pinellas County where it was filed). Moreover, although the school boards told the federal judge they wanted the case heard in "one court," they also expressed their intent to request a transfer of the case to their "home" district if the case remained in federal court. See Hollis v. Fla. State Univ., 259 F. 3d 1295, 1299 (11th Cir. 2001) (explaining that a motion to change venue of a case in federal court is governed by the federal rules, not the state home-venue privilege).

The trial court alternatively concluded venue was proper in Leon County because it is the home venue of DOE and DOE is an indispensable party to the plaintiffs' suit against the school boards. This ruling is erroneous for two reasons. First and foremost, there is no indispensable party exception to the home-venue privilege and the trial court lacked the authority to create one. See Sun-Sentinel, 865 So. 2d at 1288 (agreeing with this Court's decision in JEA that a trial court may not

12

dispense with the home-venue privilege on policy grounds, but rather the court must apply the privilege unless one of the recognized exceptions is satisfied). Second, even if there was such an exception, it would not apply here because DOE is not an indispensable party to the plaintiffs' suit that, at its essence, challenges school board decisions concerning the retention and promotion of specific students, which DOE has no role in. See, e.g., §§ 1008.25(2) ("Each district school board shall establish a comprehensive plan for student progression which must provide for a student's progression from one grade to another . . . ."), (5)(a) (noting that a student with a substantial reading deficiency must be given intensive instruction until proficiency is established in a manner determined by the district), (6)(b) (authorizing district school boards to exempt students from mandatory retention for good cause), (6)(c)2. (delegating promotion and retention determinations to school principals, subject to the district school superintendent's approval).

## B.  Injunctive Relief

The issuance of a preliminary injunction is "an extraordinary remedy which should be granted sparingly." City of Jacksonville v. Naegele Outdoor Adver. Co., 634 So. 2d 750, 752 (Fla. 1st DCA 1994) (quoting Thompson v. Planning Comm'n, 464 So. 2d 1231 (Fla. 1st DCA 1985)). To obtain an injunction, the movant must establish four criteria: (1) the likelihood of irreparable harm, (2) the unavailability

13

of an adequate remedy at law, (3) substantial likelihood of success on the merits, and (4) that the public interest supports the injunction. Id.

DOE and HCSB argue the plaintiffs did not establish any of the requisite elements for injunctive relief. We agree. Most significantly, as to DOE,[9] the plaintiffs failed to establish a likelihood of success on the merits or the unavailability of an adequate remedy at law. Additionally, the injunction is clearly not in the public interest as it is overbroad and inconsistent with the law in several respects.

With respect to the likelihood of success on the merits, the injunction was grounded on the trial court's determination that DOE has an obligation to inform the school boards that the "portfolio option" must be offered to all students who do not achieve the requisite score on the ELA, including those students who "minimally participate" in the ELA by "being present, by breaking the seal and putting their names on the test." DOE has no such obligation and, even if it did, the trial court's broad interpretation of "participation" finds no support in section 1008.25, which, as discussed above, was carefully crafted to identify and address the needs of students with demonstrated reading deficiencies. Students who refuse to answer any questions on the ELA have not "exhibited a substantial deficiency in reading," which

---

[9] We need not address the merits of the injunction as to HCSB because, as explained above, the trial court should have dismissed the suit against HCSB (and the other school boards) based on the home-venue privilege before considering the merits of the plaintiffs' motion for a temporary injunction.

14

is the statutory trigger for the required notice of the availability of alternative assessments and student portfolios. See § 1008.25(5)(c), Fla. Stat. ("The parent of any student who exhibits a substantial deficiency in reading . . . must be notified . . . .").

With respect to the unavailability of an adequate remedy at law, the plaintiffs and the trial court apparently overlooked the fact that the Administrative Procedure Act affords persons who are substantially affected by agency policy statements that are not adopted as rules to challenge those statements at the Division of Administrative Hearings. See § 120.56(4), Fla. Stat. Accordingly, to the extent that DOE has a non-rule policy regarding the extent of participation in the ELA that is required before the "portfolio option" must be offered, the plaintiffs had an adequate legal remedy to challenge that policy.

Furthermore, with respect to the public interest, the state has a compelling interest in identifying—and not "socially promoting"—third grade students with reading deficiencies. The state also has a compelling interest in having all students participate in the ELA in order to retain its federal education funding. See 20 U.S.C. § 6311(c)(4)(E) (requiring the state to implement a statewide standardized testing program that "[a]nnually measure[s] the achievement of not less than 95 percent of all students . . . who are enrolled in the public schools"). These interests will be frustrated if, as the injunction allows, students can simply "opt out" of the ELA and

15

then seek promotion to fourth grade based on their report cards and the "portfolio option."

The public interest is also not served by allowing the "portfolio option" (or the other good cause exceptions) to become the rule rather than the exception because section 1008.25(6)(b) requires students promoted to the fourth grade under a good cause exception to be provided "intensive reading instruction and interventions that include specialized diagnostic information and specific reading strategies." It would make no sense—and would be a waste of the schools' finite resources—to provide those services to students who do not need them and would not have been provided them had they simply taken the ELA and demonstrated their reading proficiency. Rather, the public interest is better served by maintaining the integrity of the standards and procedures established by the Legislature in section 1008.25, using the ELA to identify those students who—despite their best efforts on the test—have reading deficiencies that need to be addressed either by retaining the student in third grade or by providing the student intensive reading instruction after promotion to fourth grade under a good cause exception.

Finally, even if the plaintiffs had established the requisite elements for injunctive relief against DOE (and they did not), the injunction could not stand because it is inconsistent with the law and overbroad in several respects. For example, the requirement that DOE notify the school boards that the portfolio option

16

must be offered to "all grade 3 students" is inconsistent with section 1008.25(6)(b), which limits the availability of the "portfolio option" and the other good cause exceptions to students who do not score Level 2 or higher on the ELA. Additionally, the requirement that DOE notify the local school boards that "grade 3 students with no reading deficiency should be promoted, not retained" is overbroad because it would preclude the retention of students without a reading deficiency even if retention is justified for other reasons.

## IV. Conclusion

In sum, for the reasons stated above, we reverse the order denying the school boards' motions to dismiss based on the home-venue privilege and we vacate the temporary injunction entered against DOE and HCSB.

REVERSED and VACATED.

LEWIS, J., CONCURS; WOLF, J., CONCURS WITH OPINION.

WOLF, J., concurring.

I concur in that portion of the majority opinion determining that the trial court erred in denying the motion to dismiss based on home venue privilege. I also concur in that portion of the opinion that overturns the injunctive relief granted against the Department because plaintiffs had an adequate and more appropriate remedy pursuant to the Administrative Procedures Act.

Because this trial court was the improper forum for resolving the issues presented, I would not reach the merits.