FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D18-2387

_____

RICK SCOTT, in his official
capacity as Governor of the
State of Florida, and KEN
DETZNER, in his official capacity
as Secretary of State of the State
of Florida,

 Appellants,

 v.

DAVID P. TROTTI, an individual,

 Appellee.

_____

On appeal from the Circuit Court for Leon County.
Charles W. Dodson, Judge.

July 26, 2018

ROBERTS, J.

The appellants, Governor Rick Scott and Secretary of State Ken Detzner, seek review of an order from the Second Judicial Circuit granting a motion for a preliminary injunction in favor of the appellee, David P. Trotti. They argue the circuit court erred in granting injunctive relief where Mr. Trotti could not demonstrate a substantial likelihood of success on the merits in light of this Court's binding precedent in *Trotti v. Detzner,* 147 So. 3d 641 (Fla. 1st DCA 2014) *(Trotti I).* They further argue that Mr. Trotti failed

to demonstrate that the injunction would serve the public interest. We agree with the appellants and reverse the order on appeal.[1]

*Facts*

On April 2, 2018, Fourth Judicial Circuit Judge Robert M. Foster tendered a letter of resignation to Governor Scott conveying his last day in office would be December 31, 2018, one week (four business days) before his term would expire on January 7, 2019.[2] Having reached the age of seventy, Judge Foster was only eligible to finish out his term and could not seek re-election.[3] On April 23, 2018, Governor Scott accepted Judge Foster's resignation. One week later, on April 30, 2018, the statutory qualifying period for election of circuit court judges began.[4] On May 3, 2018, one day before the qualifying period was to conclude, Mr. Trotti delivered his qualifying paperwork to run for Judge Foster's seat. Notably, Mr. Trotti was the only candidate who submitted qualifying paperwork for the office of Circuit Judge, Fourth Judicial Circuit, Group 6. The Division of Elections preliminarily determined Mr. Trotti was a qualified candidate, but promptly notified Mr. Trotti that the judicial seat for which he sought to qualify was not a seat that would be filled by election.

Mr. Trotti filed a declaratory judgment in the Second Judicial Circuit Court seeking a declaration that the judicial vacancy at issue must be filled by election, not appointment. Mr. Trotti also filed a verified motion for *ex parte* injunctive relief seeking to enjoin Governor Scott from filling the judicial vacancy at issue by appointment and to enjoin Secretary Detzner from removing Mr. Trotti from the August 28, 2018, election ballot.

---

[1] Based on our disposition of the case, we find it unnecessary to address the appellants' claim that the remedies in the order exceeded the circuit court's authority.

[2] § 100.041(4), Fla. Stat. (2018).

[3] Art. V, § 8, Fla. Const.

[4] § 105.031(1), Fla. Stat. (2017).

This familiar fact pattern revives the issue of election versus appointment that this Court decided less than four years ago in *Trotti I* after Mr. Trotti attempted to qualify for another judicial seat in the Fourth Judicial Circuit, that of Judge Donald R. Moran, Jr.

### *Trotti I*

In March 2014, Judge Moran tendered a letter of resignation with an effective date of January 2, 2015, three days (one business day) before his term would expire on January 5, 2015. On April 10, 2014, Governor Scott accepted the resignation. In the interim, Mr. Trotti had submitted preliminary paperwork to qualify for the vacancy, but the statutory qualifying period for the seat did not begin until April 28, 2014. After Mr. Trotti was informed that the judicial vacancy would be filled by appointment, he filed an emergency petition for mandamus relief, which was denied by the lower court. *Trotti I*, 147 So. 3d at 642-43.

We affirmed the order denying mandamus relief, determining the judicial vacancy occurred when Governor Scott accepted Judge Moran's resignation before the commencement of the qualifying period; therefore, the vacancy had to be filled by appointment. *Id.* at 644. We expressly rejected Mr. Trotti's arguments premised upon *Spector v. Glisson*, 305 So. 2d 777 (Fla. 1974), holding,

> Here, the vacancy created by Judge Moran's resignation occurred before the qualifying period, and a physical vacancy will occur during his term such that the vacancy must be filled by gubernatorial appointment. While the dissent may eschew a bright-line test, we cannot engage in a determination of what does or does not constitute an unreasonable vacancy warranting an appointment. If we were to interpret the case law as the dissent suggests and find that an election was required here when the election process had not yet begun, we would be nullifying the Governor's power of appointment in Article V, section 11(b), of the Constitution in post-election process resignations and pre-election process resignations. Stated otherwise, we would be allowing the limited exception created by *Spector* to swallow Article V, section 11(b), of the Constitution.

3

*Id.* at 645.

Mr. Trotti appealed our decision to the Florida Supreme Court, which denied review. *Trotti v. Detzner*, 157 So. 3d 1051 (Fla. 2014).

### The Order on Appeal

Without distinguishing the facts in the instant case from the facts in *Trotti I*, the circuit court disregarded our binding precedent in *Trotti I* and granted Mr. Trotti's preliminary injunction, effective immediately.[5] This was error for several reasons.

### The Circuit Court Erred in Granting Injunctive Relief

A preliminary injunction is an "extraordinary remedy that should be granted sparingly." *State, Dep't of Health v. Bayfront HMA Med. Ctr., LLC*, 236 So. 3d 466, 472 (Fla. 1st DCA 2018) (citing *Sch. Bd. of Hernando Cty. v. Rhea*, 213 So. 3d 1032, 1040 (Fla. 1st DCA 2017)). To obtain a preliminary injunction, the movant must prove: (1) a substantial likelihood of success on the merits, (2) a lack of an adequate remedy at law, (3) the likelihood of irreparable harm absent the entry of an injunction, and (4) that injunctive relief will serve the public interest. *Id.* If the movant fails to prove any of these requirements, the motion must be denied. *Id.*

### Mr. Trotti Did Not Establish a Substantial Likelihood of Success on the Merits

"A substantial likelihood of success on the merits is shown if good reasons for anticipating the result are demonstrated. It is not enough that a merely colorable claim is advanced." *City of*

_____

[5] The appellants immediately appealed the preliminary injunction, triggering the automatic stay provisions of Florida Rule of Appellate Procedure 9.310(b)(2). The circuit court initially vacated the stay. We reversed the circuit court's order and reinstated the stay. On July 12, 2018, the Florida Supreme Court entered a constitutional writ lifting our reinstatement of the stay.

4

*Jacksonville v. Naegle Outdoor Advertising Co.*, 634 So. 2d 750, 753 (Fla. 1st DCA 1994). *Trotti I* is binding precedent that the circuit court was obligated to follow. Yet, the circuit court, aligning itself with non-binding unpublished concurring opinions, believed that this case was controlled by *Spector*. This was error.

### *The Circuit Court was Required to Follow Trotti I*

The circuit court did not find *Trotti I* distinguishable from the instant case, nor do we. Mr. Trotti argues that the instant case is distinguishable because Judge Foster faced mandatory retirement, thus the vacancy was a "known vacancy" that was simply waiting to be filled by the election process. Mr. Trotti argues that Judge Foster's motives in tendering a letter of resignation when he faced mandatory retirement were a flagrant disregard of the election process such that we should be even more compelled to apply *Spector* to this case. As we stated in *Trotti I*, we decline to engage in an analysis of subjective factors such as unreasonableness of an impending vacancy or, in this case, Judge Foster's motivation to resign.

Under Mr. Trotti's logic, and the logic of the dissent in *Trotti I*, a reviewing court would have to analyze a resigning judge's subjective intent in the hopes of determining whether the resignation was a matter of political gamesmanship. Is resigning with five days left in a term gamesmanship? What about two weeks? Or two months? And what about the judge's motivation to resign? Should it matter if the vacancy was created because the judge wanted to create a vacancy filled by appointment? What if a vacancy occurred because the judge was going on a cruise or elected to have a medical procedure? Such an analysis of subjective factors poses a slippery slope that, in our opinion, is avoidable under the plain language of the Florida Constitution and the case law interpreting it.

The bright-line rule we applied in *Trotti I*, derived from the language of the Florida Constitution, allows a reviewing court to apply neutral principles to evaluate objective facts. *See Advisory Op. to the Gov. Re Appointment or Election of Judges*, 983 So. 2d 526, 530 (Fla. 2008) (advocating the "definitive" and "practical" answer that the election process commenced on a fixed date rather than a "fluctuating" date that would be based on "variable" factors

5

and would "inject uncertainty" into the process). These neutral principles will apply no matter who the Governor is or what the current political climate looks like.

The opinion in *Trotti I* is directly on point. When a resignation is tendered with a future effective date, the vacancy is deemed to occur when the Governor accepts the resignation. *Trotti I*, 147 So. 3d at 644 (citing *In re Advisory Op. to the Gov. (Judicial Vacancies)*, 600 So. 2d 460, 462 (Fla. 1992)). When a circuit court vacancy occurs before the commencement of the election process, the Governor *shall* fill each circuit court vacancy by appointment. *See Trotti I*, 147 So. 3d at 643-44; *In re Advisory Op. to the Gov. re Sheriff & Judicial Vacancies Due to Resignations*, 928 So. 2d 1218, 1220-21 (Fla. 2006); Art. V, § 11(b), Fla. Const.

Like the facts in *Trotti I*, the facts of this case fall under the bright-line rule: Governor Scott accepted Judge Foster's resignation before the start of the qualifying period; therefore, the judicial vacancy had to be filled by appointment rather than by election. Because this Court had already spoken to the issue, the circuit court erred as a matter of law in failing to following *Trotti I*. *Trotti I* has not been overruled by an en banc opinion from this Court. Nor has it been overruled by the Florida Supreme Court. Therefore, it is still binding precedent, and the circuit court was obligated to follow it.[6] *See Pardo v. State,* 596 So. 2d 665, 666 (Fla. 1992) (district court decisions are binding on trial courts); *Wood v. Fraser*, 677 So. 2d 15, 19 (Fla. 2d DCA 1996) ("Although they are free to express their disagreement with decisions of higher courts, trial courts are not free to disregard them in the adjudicatory process.") (citing *Hernandez v. Garwood*, 390 So. 2d 357, 359 (Fla. 1980)). Not only are the circuit courts of the State bound by *Trotti I*, this panel is equally bound by our previous opinion. *See Taylor*

---

[6] When he initiated the instant lawsuit, Mr. Trotti also filed a separate petition for injunctive relief in the Fourth Judicial Circuit to try to halt the process of the Judicial Nominating Commission. The Fourth Circuit Judge appropriately recognized this Court's binding precedent in *Trotti I* meant that Mr. Trotti was not likely to succeed on the merits and denied the petition. Mr. Trotti did not appeal that ruling.

*Engineering, Inc. v. Dickerson Fla., Inc.*, 221 So. 3d 719, 723 n.3 (Fla. 1st DCA 2017) (recognizing that a three-judge panel may not overrule or recede from a prior panel's ruling on an identical point of law absent an en banc proceeding) (citing *In re Rule 9.331*, 416 So. 2d 1127 (Fla. 1982)).

*Pincket is not Controlling Precedent*

Instead of following *Trotti I*, the circuit court improperly relied upon dicta from four justices of the Florida Supreme Court in unpublished concurring opinions in *Pincket v. Detzner*, 2106 WL 3127704 (Fla. 2016) (*Pincket*).[7]  In *Pincket*, as in *Trotti I*, the Florida Supreme Court denied a petition for writ of mandamus and recognized the contested judicial office was to be filled by gubernatorial appointment rather than by election. *Id.* at *1.  In two concurring opinions, four justices disagreed with our decision in *Trotti I* and set out a roadmap for future litigants to file a declaratory judgment to resolve the issue because *Trotti I* was the only law on point such that mandamus was not available. *Id.* at *1-*3.

In granting injunctive relief here, the circuit court felt compelled to follow the concurring opinions in *Pincket*, stating, "[T]he language of four of the justices made it clear that they believe [*Trotti I*], as I interpret it, was wrongly decided . . . and that they believe *Spector* should control in a case like this." This was error as the individual views of justices in unpublished concurring opinions did not overrule our decision in *Trotti I*. *See Miller v. State*, 980 So. 2d 1092, 1094 (Fla. 2d DCA 2008) (stating concurring opinions are not precedent and "[o]nly the written, majority opinion of an appellate court has precedential value"); *Gawker Media, LLC v. Bollea*, 170 So. 3d 125, 133 (Fla. 2d DCA 2015) (recognizing unpublished opinions have no precedential value) (citing *Citizens Prop. Ins. Corp. v. Ashe*, 50 So. 3d 645, 651 n.3 (Fla. 1st DCA 2010)). *Trotti I* was, and is, the only controlling

---

[7] The same concurring opinions were also included in the unpublished opinions in *Lambert v. Scott*, 2016 WL 3128286 (Fla. 2016), and *Boyle v. Detzner*, 2016 WL 3128392 (Fla. 2016).

law on the issue in this case. Therefore, the circuit court erred as a matter of law in failing to follow binding precedent.

### *Mr. Trotti Did Not Establish That Injunctive Relief Would Serve the Public Interest*

Mr. Trotti strenuously argues that an injunction would serve the public interest by maintaining primacy of the election process. We do not disagree with the general principle that the election process should be used when available. *See Spector*, 305 So. 2d at 782. However, we cannot ignore that the Florida Constitution directs the Governor to appoint a successor in situations like the one before us. S*ee In re Adv. Op. to the Gov. re Judicial Vacancy Due to Resignation*, 42 So. 3d 795, 797 (Fla. 2010) (discussing how the provisions of article V, section 11(b) and article V, section 10(b) have been interpreted in harmony via the bright-line rule).

Mr. Trotti has argued that reversal of the injunction would deprive the voters of the Fourth Judicial Circuit of an election, but the practical reality of the remedy he seeks would be a greater disservice to the public. The circuit court ordered Secretary Detzner to keep Mr. Trotti on the ballot as a qualified candidate and to publicly announce that Mr. Trotti qualified as a candidate for Group 6 of the Fourth Judicial Circuit. As no other prospective candidates had submitted paperwork to qualify for Judge Foster's seat, Mr. Trotti would stand unopposed in the forthcoming election and would be deemed elected.[8] Mr. Trotti's proposed remedy would still disenfranchise the voters of the Fourth Judicial Circuit and prohibit them from actually choosing Judge Foster's successor. Mr. Trotti would then serve a full six-year term as circuit judge, through January 2025, without his name ever appearing on a ballot.

In contrast, under appointment, candidates for Judge Foster's seat will have been screened by lawyers and lay members of the Judicial Nominating Commission. The individual selected by the Governor would then have to appear at the next general election

---

[8] § 105.051(1)(a), Fla. Stat. (2018).

occurring more than one year after the date of appointment.[9]  This would allow the voters of the Fourth Judicial Circuit to actually vote to determine who occupies the seat in the general election held in 2020 rather than the general election held in 2024 if Mr. Trotti were installed as judge under the circuit court's injunction.

*Conclusion*

In our view, allowing for the immediate appointment to fill Judge Foster's seat respects the language of the Florida Constitution.  Further, the practical reality of an appointment would actually preserve the process championed in *Spector* and give the voters an earlier opportunity for a true election, as opposed to an election in name only.

REVERSED.

WETHERELL and OSTERHAUS, JJ., concur.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

Daniel E. Nordby, General Counsel, and Meredith L. Sasso, Chief Deputy General Counsel, Executive Office of the Governor, Tallahassee; David A. Fugett, General Counsel, and Jesse C. Dyer, Assistant General Counsel, Department of State, Tallahassee, for Appellants.

Robert J. Slama of Robert J. Slama, P.A., Jacksonville; Nicholas A. James, Jacksonville; Steven L. Brannock and Joseph T. Eagleton of Brannock & Humphries, Tampa, for Appellee; David P. Trotti, pro se, of David P. Trotti, P.A., Jacksonville, Appellee.

---

[9] Art. V, §11(b), Fla. Const.

9